kIN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| STRAGENT LLC, et al, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | NO. 6:10cv227 LED-JDL |
| | § | |
| AUDI AG, et al, | § | JURY DEMANDED |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants'[1] Motion to Transfer Venue to the Eastern District of Michigan Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 66). The matter has been fully briefed. (Doc. Nos. 144,154 & 162). Having considered the parties' arguments, the Court **DENIES** Defendants' motion.

**BACKGROUND**

Plaintiffs Stragent, LLC and SeeSaw Foundation allege that Defendants Audi AG; Volkswagen Group of America, Inc.; Volkswagen AG; Bayerische Motoren Werke AG; BMW of North America, LLC; BMW Manufacturing Co. LLC; Mercedes-Benz USA, LLC; Mercedes-Benz U.S. International, Inc.; Nissan Motor Co., Ltd.; and Nissan North America, Inc. infringe U.S. Patent Nos. 6,285,945; 6,393,352; and 6,604,043.

---

[1] Volkswagen Group of America, Inc., Nissan North American, Inc., BMW of North America, LLC, BMW Manufacturing Co., LLC, Mercedez-Benz USA, LLC, and Mercedes-Benz U.S. International, Inc. moved to transfer. (Doc. No. 66). Mercedes-Benz USA, LLC, and Mercedes-Benz U.S. International, Inc. later withdrew joinder in the motion. (Doc. No. 121). Volkswagen AG, Audi AG, Bayerishce Motoren Werke AG and Nissan Motor Co., Ltd. have not joined in the motion.

1

Stragent is a Texas company with its principal place of business in Longview, Texas. RESPONSE AT 3. Five of Stragent's six equity share owners live in the Eastern District of Texas and work out of Longview. *Id.* at 4. In addition, Stragent employs a number of individuals in the Longview office. *Id.*

Stragent donated the patents-in-suit to SeeSaw Foundation, a Texas non-profit corporation.[2] *Id.* at 5. SeeSaw Foundation then exclusively licensed the patents-in-suit back to Stragent. *Id.* SeeSaw Foundation will use the proceeds from the enforcement of the patents-in-suit to support SeeSaw Children's Place, a Texas non-profit organization that serves underprivileged children. *Id.*

The Defendants, on the other hand, include foreign and domestic entities. Of the Volkswagen defendants, Audi AG and Volkswagen AG are German corporations. (Doc. No. 204) at ¶¶ 7 & 9. Volkswagen Group of America, Inc. is a New Jersey corporation with corporate headquarters in Virginia. *Id.* at ¶ 8; (Doc. No. 66-1) at ¶ 7. Both Audi AG and Volkswagen Group of America, Inc. are subsidiaries of Volkswagen AG. *Id.* at ¶¶ 10-11; (Doc. No. 196) at ¶¶ 10-11.

As for the BMW defendants, BMW of North America, LLC and BMW Manufacturing Co., LLC are both subsidiaries of BMW (US) Holding Corp., which is a subsidiary of Bayerische Motoren Werke AG ("BMW AG"), a German company with its principal place of business in Germany. (Doc. No. 199) at ¶¶ 12 & 15; (Doc. No. 201) at ¶ 15. Both BMW of North America, LLC and BMW Manufacturing Co., LLC are Delaware limited liability companies, but BMW of North America, LLC has a principal place of business in New Jersey while BMW Manufacturing Co., LLC has its principal place of business in South Carolina. (Doc. No. 201) at ¶ 13; (Doc. No. 200) at ¶ 14.

---

[2] SeeSaw Foundation was established by SeeSaw Children's Place, another Texas non-profit corporation. PLTFFS' RESPONSE AT 4-5.

The Mercedes-Benz defendants[3] have ties to Delaware, New Jersey and Alabama. Mercedes-Benz USA, LLC's principal place of business is in New Jersey, but it is incorporated in Delaware. (Doc. No. 202) at ¶ 16. Mercedes-Benz U.S. International, Inc. is an Alabama corporation with its principal place of business in the same state. (Doc. No. 203) at ¶ 17. In addition, both Mercedes-Benz USA, LLC and Mercedes-Benz U.S. International, Inc. admit that they are subject to jurisdiction in the Eastern District of Texas for this action. *Id.* at ¶ 23; (Doc. No. 202) at ¶ 23.

Finally, Nissan North America, Inc. is organized under the laws of California and has offices in Tennessee. (Doc. No. 197) at ¶ 19. Nissan North America, Inc. admits that it has had business transactions in the Eastern District of Texas. (Doc. No. 198) at ¶ 23. Its parent company, Nissan Motor Co., Ltd., is a Japanese corporation with its principal place of business also in Japan. (Doc. No. 66-2) at ¶ 4; (Doc. No. 197) at ¶ 20.

Even though all Defendants do not join in the motion to transfer, Volkswagen Group of America, Inc., Nissan North America, Inc., BMW of North America, LLC and BMW Manufacturing Co., LLC (collectively, "Movants") move to transfer this action to the Eastern District of Michigan. *See generally* MOTION.

**LEGAL STANDARD**

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). Ultimately it is

---

[3] As stated above, the Mercedes-Benz defendants no longer join in the motion to transfer. (Doc. No. 121).

3

within a district court's sound discretion to transfer venue pursuant to 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000). The party seeking transfer must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*"). To show good cause, the moving party must demonstrate the transferee venue is clearly more convenient. *Id.*

When deciding whether to transfer venue, a district court balances the private interests of the parties and the public interests in the fair and efficient administration of justice. The private interest factors the court considers are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)("*Volkswagen I*"). The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict laws or in the application of foreign law. *Id.*

## DISCUSSION

### I. Whether the Suit Could Have Been Filed in the Eastern District of Michigan

The threshold issue in a § 1404(a) analysis is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. In a patent infringement case, venue is proper in "the judicial district where the

defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28. U.S.C. § 1400(b).

Well-established authority makes clear that a transferee court must have jurisdiction over the defendants in the transferred complaint. *In re Genentech*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (citing *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960)); *Chirife v. St. Jude Medical, Inc.,* 2009 WL 1684563, at *3-4 (E.D. Tex. June 16, 2009). Therefore, the movants have the *prima facie* burden to prove that both personal jurisdiction and venue are appropriate for all defendants in the transferee court. *Chirife*, 2009 WL 1684563, at *1 (internal citations omitted); *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549, 551 (E.D. Tex. 2009) ("Transfer of a suit involving multiple defendants is ordinarily proper 'only if all of them would have been amenable to process in, and if venue as to all of them would have been proper in, the transferee court.'") (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir. 1984), *overruled on other grounds by In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir. 1987)). The "critical time" when making this threshold inquiry is the time when the lawsuit was filed. *Balthasar*, 654 F. Supp. 2d at 549 (citing *Hoffman*, 363 U.S. at 343).

The Court finds that Movants have failed to establish that the case could have been brought in Michigan. Movants seem to assert that jurisdiction in Michigan is satisfied by a stream of commerce theory. *See* REPLY AT 1 (citing *MHL TEK, LLC v. Nissan Motor Co.*, No. 2:07cv289, 2008 U.S. Dist. LEXIS 26696, at *6 (E.D. Tex. Apr. 2, 2008) *and Aten Int'l Co. v. Ermine Tech. Co.*, 261 F.R.D. 112, 119-20 (E.D. Tex. 2009)). However, the declarations filed by Movants provide no evidence that the accused products were available in Michigan. *See Aten Int'l*, 261 F.R.D. at 119 (citing *GSK Tech., Inc. v. Schneider Elect., S.A.*, No. 6:06cv361, 2007 WL 788343, at *2 (E.D. Tex.

March 14, 2007)). Volkswagen Group of America, Inc. ("VWGoA") provided a declaration generally stating that it distributes vehicles containing the accused device across the United States, but BMW Manufacturing Co., LLC ("BMWMC") filed another declaration that was wholly silent as to any basis for jurisdiction in Michigan. *See* (Doc. No. 66-1) at ¶ 2; (Doc. No. 66-3). Accordingly, Movants fall short of satisfying their *prima facie* burden to show that personal jurisdiction is appropriate in Michigan under a stream of commerce theory.

In addition, any ties to Michigan that Movants contend exist seem tenuous. VWGoA arguably has the strongest ties to Michigan, claiming that Volkswagen and Audi have technical operations in Michigan. MOTION AT 3. However, VWGoA then admits that its U.S. headquarters has recently moved from Michigan to Virginia. *Id.* at 3, n.2. Nissan North America, Inc. ("NNA") seems to assert that jurisdiction in Michigan is appropriate, at least with respect to NNA, because a subsidiary, Nissan Technical Center North America, Inc., is located in Michigan. *See* MOTION AT 4; REPLY AT 2, n.2; (Doc. No. 154-1) at 1. However, "the existence of a parent-subsidiary relationship between two companies is not sufficient to establish jurisdiction over the parent on the basis of the subsidiary's contacts with the forum." *Hildebrandt v. Indianapolis Life Ins., Co.*, slip op., 2009 WL 398097, at *3 (N.D. Tex. Feb 17, 2009) (citing *Transure, Inc. v. Marsh and McLennan, Inc.*, 766 F.2d 1297, 1299 (9th Cir. 1985)). Finally, the BMW entities do not have any purported ties to Michigan. *See* MOTION AT 4. Thus, there is no showing that personal jurisdiction is appropriate over Movants in Michigan.

Further, Movants fail to establish personal jurisdiction over *all* Defendants named in the Complaint. Although VWGoA provides a declaration stating that "VWGoA distributes Volkswagen and Audi brand vehicles in the United States," VWGoA makes no mention of its parent company

Volkswagen AG or how Volkswagen AG is subject to jurisdiction in Michigan. (Doc. No. 66-1) at ¶ 2. The same goes for NNA and its parent company Nissan Motor Co., Ltd. ("NML"). NML is a Japanese corporation with its principal place of business in Japan, but NNA makes no effort to explain how NML, a foreign corporation, is subject to jurisdiction in Michigan. (Doc. No. 66-2) at ¶ 4. Nor do any of the movants attempt to explain why BMW AG, headquartered in Germany, is amenable to jurisdiction in the Eastern District of Michigan. Moreover, BMWMC seems to contest jurisdiction in Michigan given that (1) BMWMC "does not sell or offer for sale any products outside of its facility in South Carolina"; and (2) BMWMC is incorporated in Delaware and has a principal place of business in South Carolina. (Doc. No. 66-3) at ¶¶ 3-4. Thus, Movants have failed to show that all named Defendants could have originally been sued in Michigan.

Finally, Movants argue that jurisdiction in Michigan is appropriate "because the jurisdictional facts that the plaintiffs aver in their complaint apply equally in Michigan as they do in Texas." MOTION AT 6, n.4. Yet, in their Answers, many Movants deny jurisdiction in Texas. *See* (Doc. Nos. 61, 62 & 101) at ¶ 26; *see also* (Doc. Nos. 200, 201 & 204) at ¶ 23. Movants cannot deny jurisdiction in Texas and at the same time argue that jurisdiction is appropriate in Michigan based on attorney argument that the jurisdictional analysis for both districts would be the same.

Consequently, Movants have not carried their burden to show that the cause of action could have originally been brought in the Eastern District of Michigan. Because Movants have failed to satisfy the threshold question, Movants' Motion to Transfer Venue is denied.

## II. Private Interest Factors

Even if Movants could show that jurisdiction in Michigan is appropriate over all Defendants, the Court finds that Movants have failed to show that the Eastern District of Michigan is clearly

7

more convenient. In particular, the private interest factors set out in *Volkswagen I* do not favor transfer.

A. **The Relative Ease of Access to Sources of Proof**

Movants argue that the majority of potential witnesses and relevant documents are located in Michigan, or at least, are located closer to Michigan than Texas. According to Movants, all of Volkswagen ("VW"), Audi, and Nissan's[4] U.S. employees knowledgeable about the design and operation of the accused products are located in Michigan. MOTION AT 7-8. As for the BMW and Mercedes defendants, Movants contend that, in general, any relevant witnesses are located in New Jersey, South Carolina, and Alabama, most of which are closer to Detroit, Michigan than Tyler, Texas. *Id.* at 8. Further, Movants argue that the inventors, the entities who owned the patents prior to the SeeSaw Foundation, and the prosecuting attorneys are all located in the Eastern District of Michigan. *Id.*

As for documents relevant to the litigation, Movants also contend that such evidence is either located in Michigan or is housed in a location more convenient to Michigan than Texas. Movants argue that the technical documents related to VW's accused device are located in its technical operation facility in Michigan. *Id.* at 10. Further, the inventors' documents, prior art records of previous assignees, and prosecution files are also located in Michigan. *Id.* at 11. Movants further contend that Nissan's relevant documents are accessible from its Michigan facility, Nissan Technical

---

[4] For ease of reference, Defendants will be referred to by their general defendant group. Volkswagen of North America, Inc., Audi AG and Volkswagen AG comprise the VW defendants. Bayerische Motoren Werke AG, BMW of North America, LLC, and BMW Manufacturing Co. LLC will be referred to as the BMW defendants. The Mercedes defendants include Mercedes-Benz USA, LLC and Mercedes-Benz U.S. International, Inc. Finally, the Nissan defendants are Nissan Motor Co., Ltd. and Nissan North America, Inc.

8

Center North America.[5]  *Id.* at 10; (Doc. No. 66-2) at ¶ 13.

As for the documents that are located closer to Michigan than Texas, Movants state that VW's financial and sales information is located at VW's headquarters in Virginia. *Id.* at 11. BMW's technical and financial documents are in New Jersey and South Carolina, and Mercedes' documents are in New Jersey and Alabama. *Id.* Movants concede that the documents in Alabama are closer to Texas, but assert that this does not materially affect the convenience analysis. *Id.*

Finally, Movants contend that the location of Stragent's documents do not affect the convenience analysis. Movants argue that Stragent's documents are either located in California, which is not close to either forum, or that they have been recently shipped to Texas, a tactic used to generate venue. *Id.* at 11-12 (citing *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009)).

The location of VW's technical documents and witnesses is arguably the strongest link to the Eastern District of Michigan. VW has identified particular witnesses who reside in Michigan and are knowledgeable about the design and operation of the accused products. *See* (Doc. No. 66-1) at ¶ 7. Further, the prosecution history files, the prosecuting attorneys and the inventors are based in Michigan. Despite these ties to Michigan, this factor does not favor transfer because the rest of Defendants' ties to Michigan are tenuous or nonexistent.

First, Movants argue that Nissan's relevant documents are *accessible* from Nissan Technical Center North America, a subsidiary of Nissan North America. Movants do not assert that the

---

[5] As stated above, Nissan Technical Center North America is a subsidiary of Nissan North America. (Doc. No. 154-1).

*physical* location of Nissan's documents are located in Michigan.[6] *See In re T.S. Tech USA Corp.*, 551 F.3d 1315, 1320-21 (Fed. Cir. 2008). Further, NNA identifies one of the engineers employed by the Nissan subsidiary in Michigan, Hiroshi Tsuda, as one "knowledgeable about the design, engineering and operation of the adaptive cruise control systems used in the Nissan vehicles accused of infringement." (Doc. No. 66-2) at ¶ 11. However, NNA undercuts its argument by admitting that (1) "NML's engineers in Japan handle the design and engineering" of Nissan's accused product; (2) "[a]ll technical operations regarding Nissan's adaptive cruise control systems are located in Japan[7]; and (3) Mr. Tsuda resides in Virginia. *Id.* at ¶¶ 6, 10 & 12. Accordingly, Nissan has not shown that any of its physical evidence is actually located in Michigan.

Second, the relevant evidence is scattered throughout the United States. Movants concede that the BMW and Mercedes defendants do not have ties to the Eastern District of Michigan. MOTION AT 4. BMW's documents and witnesses are located in New Jersey and South Carolina, while Mercedes' documents are located in New Jersey and Alabama. Further, VW's financial and sales information is located in Virginia.[8]

---

[6] These documents are physically located in Japan. (Doc. No. 66-2) at ¶ 13.

[7] Because any documents and witnesses located abroad will have to travel "a significant distance no matter where they testify," the inconvenience of transporting such documents or the inconvenience of any foreign witnesses will be discounted. *See In re Genentech, Inc.*, 566 F.3d 1338, 1344 (Fed. Cir. 2009) (discounting European witnesses in the convenience analysis when reviewing a denial of transfer from Texas to California).
    The Court notes its previous concerns that it may be misguided to completely discount the convenience of foreign witnesses without regard to location no matter the facts of the particular case. *Aloft Media, LLC v. Yahoo! Inc.*, 2009 WL 1650480, at *5, n.8 (E.D. Tex. June 10, 2009). However, under these circumstances, taking into account the convenience of potential foreign witnesses would not affect the convenience analysis because Movants have not identified any foreign witnesses, much less any inconvenience that would be suffered by such witnesses.

[8] The parties make a great deal out of the location of documents and witnesses related to subcomponents of the accused devices. Although third-party witnesses are of heightened import in a § 1404 analysis, *see BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (giving convenience of non-party witnesses more weight than party witnesses), the Court finds it unnecessary here to incorporate the location of these witnesses in its analysis because the parties have failed to show their importance and materiality. *See Genentech*, 566 F.3d at 1343-

Finally, Stragent's connections to Texas will be given some weight. "[W]eight given to the location of [Plaintiffs'] documents is determined by whether [Plaintiffs are] an 'ephemeral' entity." *NovelPoint Learning LLC v. Leapfrog Enterprises, Inc.*, 2010 WL 5068146, at *4 (E.D. Tex. Dec. 6, 2010). Stragent's presence in Texas is not ephemeral because (1) it employs fourteen people in the Eastern District of Texas; (2) five of Stragent's principals live in Longview, Texas; and (3) Stragent conducts research and development-type activities in Longview.[9] *See id.* at *4-5. Further, Stragent formed as a Texas limited liability company in July 2007, indicating that Stragent's formation in Texas is not "recent" under Federal Circuit precedent. *See id.* at *5 (citing *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2009) *and In re Microsoft*, 630 F.3d 1361, 1364-65 (Fed. Cir. 2011) *modifying* 2010 WL 4630219 (Fed. Cir. Nov. 8, 2010)). Therefore, the location of Stragent's assignment, licensing, acquisition, settlement, and damages documents, which are all located in Texas, bear some weight in the transfer analysis.[10] *See Eolas Technologies, Inc. v. Adobe Systems, Inc.*, slip op., 2010 WL 3835762, at *4 (E.D. Tex. Sept. 28, 2010), *aff'd*, *In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011) (taking into account the location of a non-ephemeral entity's documents and ties to the forum).

Due to VW's ties to Michigan, it would be substantially more convenient for VW to transfer the action to the Eastern District of Michigan. However, the same cannot be said for Plaintiffs or the remaining Defendants who have ties to New Jersey, South Carolina, and Alabama. Because the

---

44. Further, the parties make no indication that the third-party witnesses with knowledge of subcomponents will be retained as experts, be deposed, or testify live at trial in this matter.

[9] Nor is Stragent's co-plaintiff, SeeSaw Foundation, an ephemeral entity. All of SeeSaw's six board members live in Gregg Count, Texas in the Eastern District of Texas. RESPONSE AT 5.

[10] For the same reasons, the Court does not find that Stragent transported documents to Texas to create venue, as Movants contend.

11

relevant evidence is located in multiple states, including the transferor forum, transferring the action to the Eastern District of Michigan will not be substantially more convenient. *See In re Google, Inc.*, 412 Fed. Appx. 295, 296 (Fed. Cir. 2011) (quoting *In re Nat'l Presto Indus., Inc.*, 347 F.3d 622, 665 (7th Cir. 2003) ("Where [defendants] are in different states there is no choice of forum that will avoid imposing inconvenience[.]")); *Eolas*, 2010 WL 3835762, at *4-5.

### B. The Availability of the Compulsory Process to Secure the Attendance of Witnesses

This factor weighs heavily for transfer if the majority of non-party witnesses are located within the Eastern District of Michigan. *See Volkswagen II*, 545 F.3d at 316. The parties have identified Gerald Sielagoski, Mark Friedrich, and Sam Rahaim, the three inventors of the patents-at-issue, and Mark Molton, Jeffrey Szuma, and Larry Shelton, the prosecuting attorneys, as material, third-party witnesses.[11] The Eastern District of Michigan may exercise subpoena power over these witnesses, whereas the Eastern District of Texas may not. Therefore, this factor weighs in favor of transfer.

### C. The Cost of Attendance for Willing Witnesses

Two of the three inventors are willing witnesses. Mark Friedrich and Sam Rahaim, both of Michigan, have agreed to appear for trial in Texas. RESPONSE AT 19. Even so, traveling to Detroit, Michigan is more convenient for these willing witnesses than traveling to Tyler, Texas. As non-party witnesses, the convenience of these witnesses is given greater weight. *See BNSF Ry. Co. v. OOCL (USA), Inc.*, 667 F. Supp. 2d 703, 711 (N.D. Tex. 2009) (giving convenience of non-party

---

[11] As stated in Note 11, due to the speculative nature of their knowledge, the Court will not take into account the convenience of potential third-party witnesses who have knowledge of subcomponents of the accused devices.

witnesses more weight than party witnesses); *Ternium Int'l USA Corp. v. Consol. Sys.*, No. 3:08-cv-816, 2009 WL 464953, at *4 (N.D. Tex. Feb. 24, 2009) (same); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994) (same); *see also Remmers v. U.S.*, No. 1:09-cv-345, 2009 WL 3617597, at *5 (E.D. Tex. Oct. 28, 2009) ("it is the convenience of non-party witnesses, rather than party witnesses, that is more important and is accorded greater weight in a transfer of venue analysis.").

Similarly, travel to Detroit from Auburn Hills, Michigan will be more convenient for the VW witnesses with knowledge of the design and operation of VW's accused product. These witnesses include Mark Thomas, Michael Reilly, Kevin Lentzer, Heinz Roth, Tom Klepp and Eric Eichhorst. MTN AT 4.

On the other hand, Stragent identifies a number of willing witnesses for whom Texas would be more convenient. Christopher Edgeworth, Stragent's manager, CEO and President, resides in Longview, Texas, and has knowledge of Stragent's licenses and licensing policies in addition to the details surrounding the assignment of the patents-in-suit to the SeeSaw Foundation. RESPONSE AT 4; SURREPLY AT 3. Likewise, Stragent's Vice President and General Counsel, Alan Stewart, also of Longview, has information concerning Stragent's licensing and policy practices. SURREPLY AT 3. Finally, the SeeSaw Foundation's Executive Director, Shirley Hook, has knowledge about the assignment and exclusive license between Stragent and the SeeSaw Foundation. *Id.* at 3-4.

As stated above, the diffuse nature of this action imposes inconvenience on the parties, regardless of the forum. Assuming the remaining defendants have their own relevant witnesses, these witnesses reside in Virginia, Tennessee, New Jersey, South Carolina and Alabama.[12] *See* MTN

---

[12] Concerning the parties' foreign witnesses, see Note 7.

AT 8. Even though the convenience of non-party witnesses, *e.g.*, the inventors of the patents-in-suit, weighs in favor of transfer, the widespread geographic nature of the case dampens the weight given to the inventors' convenience. Therefore, this factor, only slightly favors transfer.

### D. Other Practical Problems

"Practical problems include those that are rationally based on judicial economy." *Eolas*, 2010 WL 3835762, at *6 (denying a request to sever defendants); *see also In re Volkswagen of America, Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice. . . . [T]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404 was designed to prevent.")).

Transfer would not promote judicial economy in this case. As stated above, not all Defendants have joined in the Motion to Transfer. Further, none of the Movants have requested severance. However, granting the Motion to Transfer would effectively result in severance of many of the defendant groups, despite their relation to one another. For example, movant VWGoA would be transferred to Michigan, but its parent company Volkswagen AG would remain in the Eastern District of Texas. Also remaining would be the infringement allegations against the non-moving Mercedes defendants. Thus, transfer would effectively result in duplicative suits involving similar accused products:

> All defendants are accused of infringing the patents in suit, and adjudicating infringement will require construing the claims and evaluating the patents' innovation over the prior art. Thus, determining [D]efendants' liability will involve

> substantially overlapping questions of law and fact. . . . For multiple courts to simultaneously address these identical issues would be a waste of the courts' and parties' resources and could potentially lead to inconsistent results.

*Eolas*, 2010 WL 3835762, at *2. Therefore, the practical problems that would arise if the case were transferred weigh heavily against transfer.

## III. Public Interest Factors

The public interest factors are neutral. The Eastern District of Michigan has a local interest in the outcome of the case given that the inventors reside in Michigan and the resulting patents-in-suit were also prosecuted in Michigan. *See Zimmer*, 509 F.3d at 1381 (taking into account the place of research and development, as well as the location of patent prosecution in determining a local interest). Further, VW's technical operations are located in Michigan. *See Hoffman-La Roche*, 587 F.3d at 1336 ("[L]ocal interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community."). On the other hand, the Eastern District of Texas has a local interest in the outcome of the case due to Stragent's connections in Texas, which were previously determined not to be "recent" or "ephemeral" under Federal Circuit precedent.

The remaining public interest factors are also neutral. Both courts are familiar with federal patent law and there are no conflicts of law to avoid. Further, "[t]o the extent that court congestion is relevant, the speed with which a case can come to trial and be resolved may be a factor." *Genentech*, 566 F.3d at 1347. Nonetheless, this factor is the most speculative. Because the difference between the median time to trial in the transferee and transferor forums is negligible and speculative—23.4 months in the Eastern District of Michigan compared to 26.1 months in the

Eastern District of Texas—this factor is neutral.[13]

## CONCLUSION

For the foregoing reasons, Movants have failed to show that the Eastern District of Michigan is clearly more convenient. Although the availability of compulsory process in Michigan supports transfer and the cost of attendance for willing witnesses slightly favors transfer, Movants have failed to show that the case could have originally been filed in the Eastern District of Michigan. Further, the relative ease to access of proof does not favor transfer while other practical problems related to transfer weigh heavily against transfer. In addition, the public interest factors are neutral. Accordingly, the Court **DENIES** Movants' Motion to Transfer.

**So ORDERED and SIGNED this 18th day of July, 2011.**

*/s/ John D. Love*
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[13] The Court does note, however, that this case is set for trial in January 2013, about 18 months away.